The decision below is signed as a decision of

the court.

Signed: November 18, 2008.



_S. Martin Teel Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                          )
                               )
S&H ASSOCIATES LIMITED         )    Case No. 07-00399
PARTNERSHIP,                   )    (Chapter 11)
                               )    **Not for Publication in**
            Debtor.            )    **West's Bankruptcy Reporter**

MEMORANDUM DECISION RE MOTION TO OBTAIN
FINANCING AND TO SELL DEBTOR'S REAL PROPERTY

The debtor, S&H Associates Limited Partnership (S&H), owns

an apartment building at 1107 11th Street, N.W., Washington, D.C.

The United States Department of Housing and Urban Development

("HUD") holds a claim secured by a Deed of Trust against the

apartment building.  S&H filed a motion seeking to sell the

apartment building, free and clear of all liens, pursuant to 11

U.S.C. § 363.  HUD opposed that motion, contending that the

parties' agreements precluded a sale without HUD having

authorized the terms of the sale or the transferee, and that

under In re EES Lambert Assocs., 62 B.R. 328, 334 (Bankr. N.D.

Ill. 1986), and other decisions, S&H cannot utilize this

bankruptcy case to circumvent that bar against a sale.  In

response, S&H filed a further motion that, if granted, would

eliminate HUD as a lienor prior to the sale of the apartment
building, and eliminate HUD's rights to object to the sale.
Specifically, S&H filed a motion seeking approval of
post-petition financing pursuant to 11 U.S.C. § 364, and to
compel HUD to accept payment of all outstanding amounts in full
satisfaction of its secured claim.  HUD has opposed that motion
as well, contending that prepayment of the debt obligation is
prohibited by the parties' agreements.  The motions will be
denied for the following reasons.

I

S&H filed a voluntary petition for relief under Chapter 11
of the Bankruptcy Code (11 U.S.C.) on July 31, 2007.  S&H
continues to operate its business as a debtor in possession.
Pursuant to 11 U.S.C. § 1107(a), it has (with an exception of no
relevance here) the rights and powers of a trustee, including the
power to sell property under 11 U.S.C. § 363, and the power to
obtain credit under 11 U.S.C. § 364.  S&H contends that it is
entitled to borrow funds to pay off the debt to HUD and, upon
paying HUD, to sell the apartment building.

The pertinent instruments governing the parties' rights, and
whether S&H may proceed as it intends, are the Deed of Trust, a
Deed of Trust Note ("Note"), and a Regulatory Agreement
incorporated as part of the Deed of Trust.  The Note was
originally owed to James W. Rouse & Company, Inc., with HUD

(through the Federal Housing Commissioner, a HUD official) having insured the Note.  HUD became the holder of the Note by way of assignment in February 2005.

The Deed of Trust contemplated that it would be released upon S&H's debt being fully paid.[1]  The Regulatory Agreement provided that S&H could not convey the apartment building without the consent of HUD.  (Regulatory Agreement at 2, para. 6(a).) The Regulatory Agreement was to expire, however, once the debt was fully paid, and the Deed of Trust was thereby eliminated.[2] Thus, upon full payment of the debt, the Regulatory Agreement would no longer be in force to bar S&H from conveying the apartment building without HUD's consent.

HUD contends that S&H cannot pay off the debt without

---

[1]  The Deed of Trust recites that it was entered into "to secure payment of a just indebtedness of [S&H] to James W. Rouse & Company, Incorporated . . . ."  (Deed of Trust at 1.)  It further provided that the apartment building was conveyed to the trustees under the Deed of Trust in fee simple, but subject to their obligations "to permit [S&H] to possess and enjoy [the apartment building] . . . until default be made" and "upon the full payment [of the monetary obligations secured by the Deed of Trust], to release and reconvey in fee unto and at the cost of [S&H], the said described land and premises."  (Deed of Trust at 2, para. First.)

[2]  The Regulatory Agreement recited that it was in consideration for insurance of the Note by HUD, and required S&H to comply with the terms of the Regulatory Agreement only "so long as the contract of mortgage insurance continues in effect, and during such further period of time as [HUD] shall be the owner, holder or reinsurer of the mortgage, or during any time [HUD] is obligated to insure a mortgage on the mortgaged property."  (Regulatory Agreement at 1.)

running afoul of a bar against prepayment before maturity of the
Note.  The Note provided that the balance of the debt, after
taking into account prior payments, "shall be due and payable on
June 1, 2012."  That was thus the maturity date of the note.

With exceptions of no relevance here, the Note provided that
the debt "may not be prepaid either in whole or in part prior to
the final maturity date hereof without the prior written approval
of [HUD] . . . ."  S&H concedes that but for HUD having
accelerated the debt, this provision against prepayment would
have barred S&H's paying the entire debt prior to the maturity
date of June 1, 2012.  It contends, however, that HUD's
acceleration of the debt entitles S&H to pay off the debt without
running afoul of the prepayment restriction.

The Deed of Trust provided three distinct remedies in the
event of a default.  First, it provided a mortgagee in possession
remedy in the event of a monetary default.[3]  Second, it provided
for appointment of a receiver in the event of any default in
complying with an obligation under the Deed of Trust (which
included making timely payments of the Note and maintaining the

---

[3]  In the event of a monetary default, the Deed of Trust
provided that the trustees under the Deed of Trust "shall be
entitled to immediate possession of said land and premises and to
receive and collect the rents, issues, and profits thereof" and
provided a procedure for the trustees' obtaining possession if
S&H failed to turn over possession after default and after a
demand by the trustees for possession.  (Deed of Trust at 3,
para. 15.)

4

apartment building in good repair and condition).[4]  Third, it

provided a foreclosure remedy in the event of any such default.[5]

S&H defaulted in making payments on the Note when due and in

maintaining the apartment building in good repair.  Rather than

pursue the remedy of the trustees under the Deed of Trust of

becoming a mortgagee in possession or the remedy of obtaining

appointment of a receiver, HUD elected to accelerate the Note and

to give notice of a foreclosure.  HUD declared the entire amount

of the indebtedness secured by the Deed of Trust "to be

immediately due and payable."  (Notice of Default and Foreclosure

---

[4]  The Deed of Trust provided that "upon default hereunder
the holder of the note shall be entitled to the appointment of a
receiver by any court having jurisdiction, without notice, to
take possession and protect the property described herein and
operate same and collect the rents, profits and income
therefrom." (Deed of Trust at 2, para. 5.)  This would apply to
both monetary defaults and a default in maintaining the apartment
building in good repair and condition.  The Regulatory Agreement
(which was incorporated by the Deed of Trust) required S&H
promptly to make all payments due under the Note and the Deed of
Trust.  (Regulatory Agreement, para. 1.)  It further required S&H
to maintain the mortgaged premises in good repair and condition.
(Regulatory Agreement, para. 7.)

[5]  The Deed of Trust provided that, upon a default by S&H in
making any required payment or to perform any other covenants,
the trustees "shall have power . . . to sell . . . at public
auction, for cash, in one parcel" (meaning, obviously, to sell at
public auction the apartment building as one parcel).  (Deed of
Trust at 2, para. Second.)

Sale dated July 3, 2007, at 2.)[6]  The parties' agreements

---

[6]  There apparently was at least one earlier notice of acceleration as a letter dated September 27, 2006, refers to the debt having been accelerated (see Debtor's Hearing Ex. 5), and another exhibit dated June 20, 2005, refers to the debt having been accelerated (see Debtor's Hearing Ex. 4).  But the record does not include a copy of any such notice.  Accordingly, the relevant acceleration of the debt is contained in the Notice dated July 3, 2007, pursuant to which HUD is now seeking to foreclose.

permitted such acceleration.[7]

The Notice of Default and Foreclosure Sale further gave
notice that HUD had designated a Foreclosure Commissioner
pursuant to a Designation of Foreclosure Commissioner.  The
Notice of Default and Foreclosure Sale, which was issued by the
Foreclosure Commissioner, stated that the notice of the

---

[7]  The Note, the Deed of Trust, and the Regulatory Agreement
all contain provisions that upon a default by the debtor in its
obligations under the instruments, the debt could be declared
"due and payable":

- The Note provides that "[i]f default be made in the
  payment of any installment under this note, and if such
  default is not made good prior to the due date of the
  next such installment, the entire principal sum and
  accrued interest shall at once become due and payable
  without notice, at the option of the holder of this
  note."  (Note at 1.)

- The Deed of Trust provides that "[u]pon default under
  the Regulatory Agreement and upon the request of the
  Federal Housing Commissioner, the holder of the note,
  at its option, may declare the whole of the
  indebtedness secured hereby to be due and payable."
  (Deed of Trust at 2, para. 3.)

- The Deed of Trust further provides that upon a default
  in making required payments of the debt "then at the
  option of the holder, the entire indebtedness hereby
  secured shall become due, payable, and collectable then
  and thereafter as the holder of the said note may
  elect, **regardless of the date of maturity**" (Deed of
  Trust at 3, para. 19) (emphasis added).

- The Regulatory Agreement provides that if HUD holds the
  Note, then upon a default under the Agreement, HUD may
  "declare the whole of said indebtedness immediately due
  and payable and then proceed with the foreclosure of
  the mortgage."  (Regulatory Agreement at 4, para.
  11(a)(1).)

7

foreclosure sale was given "pursuant to the powers vested in me
by the Multifamily Mortgage Foreclosure Act of 1981, 12 U.S.C.
Section 3701, *et seq.*, [and] by 24 C.F.R. Part 27," and gave
notice of the Foreclosure Commissioner's intention to conduct a
foreclosure sale on August 1, 2007.[8]

S&H's bankruptcy ensued on July 31, 2007, and the automatic
stay of 11 U.S.C. § 362(a) prevented the foreclosure sale from
going forward.  The motions at issue then ensued, and were heard
on October 22, 2008, after efforts at settlement failed.[9]

II

The Deed of Trust, the Note, and the Regulatory Agreement
did not specify the law under which they would be enforced.  But
because the apartment building is located in the District of
Columbia, the law of the District of Columbia would govern the
rights of HUD as the current holder of the Note unless certain
federal statutes (discussed in part III, below) alter those
rights.

---

[8]  The Designation (attached as an exhibit to the Notice)
recited that the Foreclosure Commissioner was designated as such
"to conduct a nonjudicial foreclosure" of the apartment building
"to be conducted pursuant to the [Multifamily Mortgage
Foreclosure Act of 1981], the regulations promulgated thereunder,
and the instructions given to [the Foreclosure Commissioner] by
the Secretary or the Secretary's designee."

[9]  This decision supplants the court's oral decision of
October 28, 2008, which was vacated pursuant to a subsequent
order of this court (Docket Entry No. 131).

HUD's acceleration of the debt would, under District of
Columbia law, permit S&H to pay the debt despite the bar against
prepayment that would otherwise exist.  The reported decisions
addressing the effect of acceleration on provisions addressing
prepayment most commonly involve the effect of acceleration on a
note provision imposing a penalty if the note is paid before
maturity.  With respect to that issue, there is no reason to
believe that the District of Columbia Court of Appeals would not
agree with the observation in In re LHD Realty Corp., 726 F.2d
327, 330-31 (7th Cir. 1984), that "acceleration, by definition,
advances the maturity date of the debt so that payment thereafter
is not prepayment but instead is payment made after maturity."
In an accompanying footnote to this sentence, the decision noted:

> Even after acceleration, a lender may be able to regain
> its right to a premium by revoking its acceleration and
> reinstating the mortgage prior to detrimental reliance
> by the borrower on the acceleration.  Berenato v. Bell
> Savings & Loan Ass'n, 276 Pa. Super. 599, 419 A.2d 620,
> 622 (1980).

In re LHD Realty Corp., 726 F.2d at 331 n.4.

The reasoning of In re LHD Realty Corp. would lead to the
conclusion that an acceleration results in a waiver of a note
provision barring payment before the maturity date, and there is
no reason to believe that the District of Columbia Court of

9

Appeals would not so hold.[10]   This leads to two conclusions

here.  First, the acceleration of the debt, *unless a statute*

*altered the consequences of such acceleration*, would result in

the entire debt being matured and payable by S&H despite the

Note's provision against paying the entire debt prior to the

original maturity date.  Second, if acceleration *did* entitle S&H

to pay off the debt despite the Note provision barring prepayment

before the original maturity date, an attempt by HUD to de-

accelerate the debt might be barred by S&H's detrimental reliance

on the acceleration, the detrimental reliance being that S&H has

incurred substantial attorney's fees in pursuing a declaration

that it has the right to pay the accelerated debt.

Although HUD emphasizes that there were nonmonetary

defaults, as well as monetary defaults, that triggered HUD's

foreclosure efforts, HUD nevertheless plainly accelerated the

---

[10]   But the payment may still trigger a penalty for paying a
debt before the original maturity date.  Parties may agree that a
penalty for such early payment will still be owed even when the
payment arises upon an acceleration of the debt.  See Westmark
Commercial Mortgage Fund IV v. Teenform Assocs., 827 A.2d 1154,
1158 (N.J. 2003).  It is a matter of semantics: if the penalty is
construed as applying to payment before the original maturity
date, then the "prepayment" penalty is owed; if it applies to
payment before the debt matures, then the prepayment penalty is
not owed.  Moreover, the prepayment penalty may be owed if the
default was intentional.  Fla. Nat'l Bank v. Bankatlantic, 589
So.2d 255, 258-59 (Fla. 1991).  By reason of acceleration,
however, the debt becomes matured, and the debt is due and
payable, with any prohibition against prepayment deemed waived,
regardless of whether a penalty is owed for payment before the
original maturity date.

debt.  Indeed, the statutory foreclosure procedure HUD has
invoked expressly requires acceleration of the debt as a
condition to pursuing foreclosure, even when it is based on
nonmonetary defaults.  See 12 U.S.C. § 3706(a)(4).  Having
accelerated the debt, HUD must suffer the usual consequences of
acceleration, unless some federal statute protects HUD from the
usual consequences.

### III

HUD's only hope in its efforts to preclude S&H from paying
off the debt is that some federal statute has undone the ordinary
consequences of acceleration of the debt.  HUD can look to two
statutes as touching on foreclosures by HUD, 12 U.S.C. § 1701z-11
and the Multifamily Mortgage Foreclosure Act of 1981, 12 U.S.C.
Section 3701, *et seq.*

### A.

At oral argument, HUD contended that the applicable statute
was 12 U.S.C. § 1701z-11 and that the applicable regulations are
found in 24 C.F.R. Part 290.  However, as demonstrated below, 12
U.S.C. § 1701z-11 only briefly touches on foreclosure sales in
§ 1701z-11(c)(3)(B), and does not deal with the critical issue
S&H has raised.  Although 24 C.F.R. Part 290 supplements the
requirements of 12 U.S.C. § 1701z-11, it does not address
foreclosure sales; instead, it addresses dispositions of HUD-
owned multifamily housing projects or sales of HUD-owned

11

mortgages on multifamily housing projects.

Under 12 U.S.C. § 1701z-11(c)(3)(B), the Secretary of HUD
shall:

> dispose of a multifamily housing project through a
> foreclosure sale only to a purchaser that the Secretary
> determines is capable of implementing a sound financial
> and physical management program that is designed to
> enable the project to meet anticipated operating and
> repair expenses to ensure that the project will remain
> in decent, safe, and sanitary condition and in
> compliance with any standards under applicable State or
> local laws, rules, ordinances, or regulations relating
> to the physical condition of the housing and any such
> standards established by the Secretary.

This provision evidences an intent that HUD sell a HUD-owned
property at foreclosure sale only to a purchaser who will be able
to meet federal goals regarding multifamily housing projects.  It
might also suggest that HUD should avoid invoking the foreclosure
remedy if acceleration of the debt would lead to the property
owner's paying off the accelerated debt, thereby disabling HUD
from assuring that the property's owner will meet federal goals
regarding multifamily housing projects.  That HUD perhaps ought
to avoid accelerating the debt in such circumstances, however,
does not alter a mortgagor's rights arising from acceleration.
Section 1701z-11 contains no language altering the usual
consequence of a mortgagee's acceleration of the mortgage debt on
a proscription against payment before the original maturity date.
Nothing in § 1701z-11, standing alone, negates the waiver of that
proscription, which would apply if HUD accelerated the debt

12

incident to procedures under District of Columbia law for
foreclosure.

B.

Nevertheless, the foreclosure statute that HUD has invoked
in proceeding with foreclosure efforts, and that requires the
debt to be accelerated incident to such efforts, must be read as
altering the consequences of an acceleration.  HUD's Foreclosure
Commissioner proceeded under the Multifamily Mortgage Foreclosure
Act of 1981, 12 U.S.C. Section 3701, *et seq.*, in issuing the
Notice of Default and Foreclosure Sale, and although that statute
does not expressly address the consequences of acceleration, it
contemplates that a foreclosure sale can be stopped, in the case
of a monetary default, only via a cure of the default, not a full
payment of the debt.

The statute directs that when foreclosure is to proceed
pursuant to the statute, a notice of default and foreclosure sale
shall be served describing the "defaults upon which foreclosure
is based, and the acceleration of the secured indebtedness[.]" 12
U.S.C. § 3706(a)(4).  The statute contemplates that foreclosure
shall not go forward only if defaults are cured, and that upon
such cures resulting in a cancellation of the foreclosure sale,
the mortgage debt will be treated as not having been accelerated.
Specifically, under 12 U.S.C. § 3709(a), with exceptions of no
relevance here, the foreclosure commissioner shall withdraw the

13

security property from foreclosure and cancel a foreclosure sale only if certain cures are effectuated. In the case of a monetary default, the property may be withdrawn from foreclosure only if "there is tendered to the foreclosure commissioner before public auction is completed the entire amount of principal and interest which would be due if payments under the mortgage had not been accelerated." 12 U.S.C. § 3709(a)(3)(A). In the case of a nonmonetary default, the property may be withdrawn from foreclosure only if "the foreclosure commissioner, upon application of the mortgagor before the date of foreclosure sale, finds that such default is cured[.]" 12 U.S.C. § 3709(a)(3)(B). Significantly, upon such cancellation of the foreclosure, "the mortgage shall continue in effect as though acceleration had not occurred." 12 U.S.C. § 3709(c). The statute thus contemplates that the mortgagor can cause a cancellation of foreclosure by curing defaults, and that upon such cures being made and the foreclosure being canceled, the mortgage is treated as not having been accelerated.

The statute does not expressly address the effect of acceleration, pursuant to its foreclosure provisions, on a prohibition against prepayment of the mortgage debt before the original maturity date of the mortgage debt. However, by providing that foreclosure will be canceled only upon a cure of defaults, with the mortgage to be treated as not having been

14

accelerated upon such a cure and cancellation, the statute
contemplates that HUD may insist that the debtor stop a
foreclosure sale only by making a cure, not a full payment of the
debt, with the cure to result in reinstatement of the mortgage
debt as though acceleration had not occurred (with the bar
against prepayment of the entire debt before maturity still
intact).  The apparent purpose of acceleration under the statute
is to permit the entire debt to be collected if a foreclosure
sale is completed, but not to treat the debt as matured short of
a foreclosure sale being completed: the mortgage debtor is
entitled to prevent foreclosure only via a cure, not via paying
off the entire debt.

     The statute must be interpreted in this fashion because of
Congress's findings in enacting the statute.  First, 12 U.S.C. §
3701(a)(1) demonstrates that the foreclosure procedures of the
statute are intended to displace disparate state foreclosure
laws, and thereby to avoid the burden those laws impose on the
programs that HUD is administering and the detriment those laws
cause for the residents of the affected projects and the

community generally.[11]   Second, 12 U.S.C. § 3701(a)(3) sets forth

the finding of Congress that without the statute, disparate State

foreclosure laws would frustrate the "national housing goal of 'a

decent home and a suitable living environment for every American

family[.]'"   The prohibition in the Note against prepayment was

likely intended to keep the apartment building subject to the

terms of the Regulatory Agreement for the full term of the Note

in order to assure that the apartment building remained at least

that long as part of the federal housing program.   It makes no

sense that HUD would lose that protection of the Note upon

invoking foreclosure pursuant to a statute, the Multifamily

Mortgage Foreclosure Act of 1981, that was designed to further

the purposes of the federal housing program.[12]

     The Multifamily Mortgage Foreclosure Act of 1981 was enacted

after S&H executed the Note, Deed of Trust, and Regulatory

---

[11]   Specifically, § 3701(a)(1) provides that Congress finds
that:

     disparate State laws under which the Secretary of
     Housing and Urban Development forecloses multifamily
     mortgages burden the programs administered by the
     Secretary pursuant to these authorities, and cause
     detriment to the residents of the affected projects in
     the community generally[.]

[12]   Indeed, 24 C.F.R. § 27.20(c) recognizes the right of HUD
to insist that the purchaser at a foreclosure sale be subject to
terms of a duration no longer than the earliest date on which the
mortgagor could have prepaid the mortgage debt without HUD's
consent, or the maturity date of the mortgage, whichever is
earlier.

Agreement in this case, and applies retroactively.  Retroactive

application of the Act has been held to be constitutional.  <u>See</u>

<u>Lisbon Square v. United States</u>, 856 F. Supp. 482, 490 (E.D. Wis.

1994).  In any event, there is no issue of unfairness in applying

the statute retroactively to S&H.  Under the Deed of Trust, HUD

could have proceeded under District of Columbia law to engage in

a nonjudicial foreclosure sale without accelerating the debt, and

accordingly the Multifamily Mortgage Foreclosure Act of 1981 does

not make S&H worse off.

The Deed of Trust provided that in the event of a monetary

or nonmonetary default, the trustees were to have the power to

sell in one parcel (meaning, obviously, the power to sell the

apartment building in one parcel) at public auction for cash, and

directed that they:

> shall apply the proceeds of said sale . . . THIRDLY, to
> pay whatever may then remain unpaid of the principal of
> the said note **whether the same shall be due or not**,
> and the interest thereon to date of payment, it being
> agreed that said note shall, upon such sale being made
> before the maturity of said note, be and become
> immediately due and payable, at the election of the
> holders thereof[.]

(Deed of Trust at 2, para. Second) (emphasis added).  Nothing in

the Deed of Trust or District of Columbia law required HUD to

accelerate the debt before proceeding with foreclosure.

Accordingly, HUD could have given notice under District of

Columbia law that it was proceeding to foreclosure based upon

S&H's missed monthly payments and based on S&H's failure to

17

maintain the apartment building in good condition, without
accelerating the debt and insisting that the entire debt be paid
if S&H were to avoid foreclosure.  A partial foreclosure (meaning
a foreclosure without the entire debt having been accelerated)
often presents problems for the mortgagee.  See 4 Richard R.
Powell, Powell on Real Property, § 37.37[4] at 38-252 (Michael
Allan Wolf ed., 2000); Grant S. Nelson and Dale A. Whitman, Real
Estate Finance Law, § 7.8 at 484-86 (3d ed. 1994) (hereinafter
"Real Estate Finance Law").  But here the Deed of Trust avoids
any such problem by permitting the proceeds of a sale to be
applied to the entire debt even if the entire debt is not yet
due, with acceleration occurring only after the sale was made.
Alternatively, HUD could announce that it was selling the
apartment building for only the monthly payments that had been
missed, and sell the apartment building subject to its Deed of
Trust for the remaining balance of the debt.  See Real Estate
Finance Law § 7.8 at 486 n.10.

The Multifamily Mortgage Foreclosure Act of 1981
affirmatively requires acceleration of the debt upon HUD pursuing
foreclosure, but at the same time makes evident that a
foreclosure will be canceled only upon a cure of defaults, not a
payment of the entire debt, with the mortgage debt to be
reinstated as though acceleration had not occurred.  S&H is no
worse off than if HUD had proceeded under District of Columbia

18

law to foreclose based on the defaults at issue without
accelerating the debt.

S&H might argue that its right to cause a foreclosure to be
canceled by curing its defaults is in addition to its right to
prepay the entire debt by reason of acceleration.  Under District
of Columbia law, the right to stop foreclosure by curing a
default is distinct from the right to stop foreclosure by paying
the entire debt.  For example, in the District of Columbia, a
residential mortgage debtor would be entitled to avoid
foreclosure by paying off the entire accelerated debt even if the
mortgagor had failed to cure by the deadline set by D.C. Code §
42-815.01.  See Bank-Fund Staff Fed. Credit Union v. Cuellar, 639
A.2d 561, 576 (D.C. 1994) ("the cure statute was designed to
prevent lenders from putting borrowers in the position of having
to make payment of the note in full or forfeit their homes").
But the Multifamily Mortgage Foreclosure Act of 1981 foreclosure
procedures displace District of Columbia foreclosure law, and the
consequences that acceleration of the debt would have had under
District of Columbia law are rendered inapplicable, with the
right to pay the entire debt in order to stop foreclosure
replaced with the limited right to cure all monetary and
nonmonetary defaults in order to stop foreclosure.

S&H has a facially appealing argument that acceleration
means acceleration in its ordinary sense pursuant to which the

19

full debt is now due and payable, and that an acceleration ought
to carry with it the consequence of permitting full payment of
the accelerated debt.   As S&H points out, HUD had other remedies
available to address S&H's defaults that would not have entailed
acceleration of the debt.   Nevertheless, I view the Multifamily
Mortgage Foreclosure Act of 1981 as limiting S&H to curing
defaults if it wishes to avoid foreclosure under that statute,
and as barring S&H from using payment of the entire debt as a way
to avoid foreclosure.   Because the debt was accelerated for
purposes of proceeding to foreclosure under the Act, the
consequences of acceleration on the Note's prohibition against
payment of the entire debt prior to the Note's maturity date in
2012 must be addressed in the context of what S&H is permitted to
do in order to avoid foreclosure under the Act, not what S&H
would be permitted to do if the debt were accelerated under an
attempt at foreclosure under District of Columbia law.

S&H's position is consistent with a position that HUD
embraced early on.   S&H received a Statement of Multifamily
Mortgage Account dated June 20, 2005, from the HUD Field Office
after an earlier notice of foreclosure that apparently was
withdrawn after issuance of the Notice.   The Statement showed the
entire debt owed as of July 1, 2005, and then stated:

>   This loan is in FORECLOSURE and has been ACCELERATED.
>   The total amount currently due and payable on this loan
>   is the amount shown in the TOTAL AMOUNT DUE column. . .
>   . Payment of any amount less than the TOTAL DUE will

20

not stop the FORECLOSURE.  This bill is sent to you for
INFORMATION ONLY.

That Statement is inconsistent with HUD's position with respect
to its current foreclosure efforts pursuant to the Notice of
Default and Foreclosure Sale dated July 3, 2007.  S&H, however,
has not shown any reason to bind HUD to any prior erroneous
interpretation by its Field Office of the parties' rights.  Prior
to the commencement of this bankruptcy case, HUD made clear that
it would not accept a payoff of the entire debt.  Although the
Statement does illustrate that acceleration is *ordinarily* viewed
as conferring on the obligor the right to pay the entire debt,
the Multifamily Mortgage Foreclosure Act of 1981 displaces the
ordinary effect of acceleration, and permits foreclosure to be
avoided only via a cure, not via a full payment of the debt.

     Because S&H has no right to pay off the entire debt prior to
the maturity date in 2012, its motion to borrow, if granted,
would serve no purpose.  Accordingly, I will deny S&H's motion to
borrow.

                                IV

     HUD argues that the federal multifamily housing laws at
issue and the Bankruptcy Code must be harmonized, and that a sale
with no Regulatory Agreement in place would be an impermissible
circumvention of the federal housing laws at issue, citing In re
EES Lambert Assocs., 62 B.R. 328, 334 (Bankr. N.D. Ill. 1986),
and other decisions.  S&H has not attempted to rebut that

                                21

argument, opting instead to bypass that issue via its
unsuccessful motion for a decree that it is entitled to pay off
the entire debt based on the debt having been accelerated.
Accordingly, I will deny S&H's motion to sell the apartment
building without the Regulatory Agreement being binding on the
purchaser.[13]

I need not address at this juncture whether procedures can
be adopted for approving a sale in the bankruptcy case despite
HUD's right under the Regulatory Agreement to insist on approving
any purchaser, and the parties have not adequately briefed that
issue. As discussed next, S&H *has* asked that the court determine
the limits on HUD's imposing conditions on a purchaser at
foreclosure (and implicitly on any sale that could be
accomplished through a sale motion in this case), but the issue
has not been framed in a procedurally correct fashion.

V

S&H's papers seek a ruling that HUD may not insist at any
foreclosure sale that the purchaser enter into a new Regulatory
Agreement lasting longer than the existing Regulatory Agreement,
or insist that the purchaser make other commitments to which S&H
was not obligated. The debt under the Note here is a non-

---

[13] Although S&H suggested that the purchaser might be
willing to agree to the Regulatory Agreement continuing for its
current duration, the sale motion was never amended to so
provide.

recourse obligation, but the terms of a sale could have an impact
on S&H if they depress the amount received at a foreclosure sale
and prevent the sale's resulting in excess proceeds or lessen
such excess proceeds.

It appears that 12 U.S.C. § 3706(b) governs what terms may
be imposed upon a purchaser at a foreclosure sale under the
Multifamily Mortgage Foreclosure Act of 1981.  In turn, 24 C.F.R.
§ 27.20 elaborates on the statutory provision.  The parties have
failed specifically to address the statutory provision and the
provisions under the regulation.  My reading of the regulation,
without having the benefit of briefing by the parties, suggests
that the debtor is correct.  Specifically, 24 C.F.R. § 27.20(c)
provides:

> Terms which the Secretary may require to be agreed to
> by the purchaser pursuant to this section [which
> implements 12 U.S.C. § 3706(b), the provision pursuant
> to which HUD issued its Notice of Default and
> Foreclosure Sale] shall generally not be more
> restrictive, or binding for a longer duration, than the
> terms by which the mortgagor was bound prior to the
> foreclosure.

The difficulty is that HUD was presented with motions
seeking specific relief that it has successfully defeated.  It
was not presented with a motion (or complaint) for a declaratory
judgment, or a motion for a sale on terms that continued in place
the terms of the existing Regulatory Agreement.  Accordingly, HUD
was not required to address whether it could insist upon
different terms than those contained in the Regulatory

23

Agreement.[14]  Moreover, S&H did not cite 24 C.F.R. § 27.20(c) in its papers.[15]

The debtor may propose a sale on the terms that it believes HUD properly insisted upon in the Notice of Default and Foreclosure, dropping any terms that it believes HUD could not properly have insisted upon.  Then, upon HUD objecting to the sale, the court can address more thoroughly whether the debtor's position is correct, and whether the national housing laws at issue and the Bankruptcy Code can be harmonized in a fashion that permits a sale to be authorized by this court.  Alternatively, S&H may seek formally to obtain a declaratory judgment as to its rights (although I do not commit at this juncture whether such declaratory relief would be appropriate despite any procedural defenses that HUD might attempt to raise).

---

[14]  Nor did S&H's motions put directly at issue whether the debtor could reject the Regulatory Agreement as an executory contract, even though S&H suggested in oral argument that it could reject it.  The Regulatory Agreement was made part of the Deed of Trust, and S&H has not addressed whether a lien, or to be more precise, mortgage obligations, can be treated as an executory contract.

[15]  One of the conditions of the foreclosure sale bid terms imposed by HUD was that the purchaser be a nonprofit entity.  The record does not reveal whether S&H was a nonprofit entity, and thus whether this condition was a new requirement for an entity to be allowed to own the apartment building.  Even if that term could not be imposed in a foreclosure sale, HUD had the right not to consent to a sale by the debtor, and so an issue exists as to whether (regardless of what it could do incident to a foreclosure sale) HUD would be entitled to insist that any sale by the debtor be to a nonprofit entity.

24

Case 07-00399   Doc 133   Filed 11/19/08   Entered 11/19/08 08:59:19   Desc Main
Document    Page 25 of 25

VI

Orders follow denying S&H's two motions, without prejudice to S&H's seeking to sell the apartment building anew on different terms.[16]

[Signed and dated above.]

Copies to: Debtor; Debtor's attorney; Office of United States Trustee; Fred E. Haynes, Assistant United States Attorney; Scott R. Robinson, Esq.; Christopher Jones, Esq.; Nancy L. Alper, Esq., Assistant Attorney General for the District of Columbia.

---

[16] S&H is free as well to pursue an appeal to the District Court to obtain review of this court's decision regarding whether the acceleration of the debt did not result in a waiver of the prepayment prohibition. Although I do not believe that Congress intended that acceleration of the debt under the Multifamily Mortgage Foreclosure Act of 1981, 12 U.S.C. Section 3701, *et seq.*, would result in a waiver of any bar in the debt instrument against prepayment, the issue is not free from doubt. S&H is free as well to file a motion requesting this court to certify the appeal for the Court of Appeals to consider allowing a direct appeal to the Court of Appeals pursuant to 28 U.S.C. § 158(d)(2)(A) on the basis that the judgment involves questions of law as to which there is no controlling decision of the Court of Appeals or of the Supreme Court, and that an immediate appeal may materially advance the progress of S&H's bankruptcy case.